# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| DELOIS DUNN, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| V. | § | A-10-CV-818 SS |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE SAM SPARKS
UNITED STATES DISTRICT JUDGE

The undersigned Magistrate Judge issues this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Before the Court are Plaintiff's Brief in Support of Claim, filed April 11, 2011 (Clerk's Dkt. #10); the Brief in Support of the Commissioner's Decision, filed June 10, 2011 (Clerk's Dkt. #11); the Plaintiff's Reply Brief, filed June 21, 2011 (Clerk's Dkt. #12); and the Social Security Record filed in this case ("Tr.").

## I. PROCEDURAL HISTORY

Plaintiff Delois Dunn ("Dunn") filed for disability benefits on February 20, 2009, alleging disability beginning March 31, 2007. (Tr. 10). Plaintiff's claim was denied at the administrative level. (Tr. 54). Dunn filed a written request for a hearing, which was conducted before an

Administrative Law Judge ("ALJ") through video teleconference on January 15, 2010. (Tr. 63, 77). The ALJ issued his decision on April 28, 2010. Plaintiff appealed. (Tr. 4). The Appeals Council denied Plaintiff's request for review of the ALJ's decision on September 3, 2010. (Tr. 1). Dunn then filed this action seeking judicial review of the ALJ's decision on October 31, 2010.

## II. FACTUAL BACKGROUND

Plaintiff Dunn was born on July 16, 1949. She was 60 years old at the time of the hearing and decision. (Tr. 111). She completed one and a half years of college. (Tr. 27). Prior to the ALJ's decision, Plaintiff worked for 22 years as a microfilming technician until March 2007, and worked for about two months as a home health aide in late 2007. (Tr. 28-29, 131, 142, 153). In an undated disability report, she reported the following health problems: osteoarthritis, right knee replacement, type 1 diabetes, autoimmune hepatitis, gastritis, rapid heartbeat, lymphedema, hypertension, and high cholesterol. (Tr. 140-41).

The ALJ conducted a *de novo* video teleconference administrative hearing in Austin, Texas on January 15, 2010. (Tr. 77). At the hearing Plaintiff's non-attorney representative, Ruth Smith, cited medical evidence of Plaintiff's multiple medical problems that prevented her from working full time: osteoarthritis of both knees, total knee replacement on the right knee, degenerative disc disease of the lumbar spine, tuberculosis, autoimmune hepatitis, insulin dependent diabetes mellitus, and lupus. (Tr. 26). During the hearing, Plaintiff testified that she could walk for 15 minutes at a time, sit for 10-15 minutes at a time, and lift 10 pounds. (Tr. 33).

## III. ADMINISTRATIVE DECISION

On April 28, 2010 the ALJ found the Plaintiff not disabled. (Tr. 7). In determining Plaintiff was not entitled to benefits, the ALJ found that she had not engaged in substantial gainful activity

since the alleged onset date of March 31, 2007. At step two, the ALJ found Plaintiff had the severe impairments of cervical stenosis with degenerative changes; status post cervical fusion; history of degenerative joint disease in right knee (status post total joint replacement) and congenital right eye blindness. (Tr. 12). These were surprising findings, to say the least, given that Plaintiff never complained of many of these impairments, and does not suffer from them.

Having made these "findings," the ALJ then concluded that Plaintiff's knee, back, and eye impairments did not meet or equal the listed impairments, 20 CFR § 404(P) app. 1 §§ 1.02A, 1.04, 2.02, 2.03, and 2.04. (Tr. 13). The ALJ then stated that Plaintiff retains the residual functional capacity (RFC) to sustain competitive employment while performing certain activities limited in duration and intensity. (Tr. 13). Because so much of the ALJ's decision is clearly based on some other claimant, and not the Plaintiff, it is worth quoting it at length:

> Claimant is a 54 year old individual with high school education. She is alleging disability due to degenerative spinal disease, fractured and severed spine, and blindness in the right eye from birth. (Exhibit 3E/2) She alleged that he [*sic*] cannot lift, climb, walk, sit, or stand for more than 30 minutes without pain. Claimant reported that she is on very strong pain medication and is unable to drive. (Exhibit 3E/2)
>
> At the hearing, the claimant testified that she suffers from constant pain since her motor vehicle accident. Claimant testified that she has not taken prescription pain medications since November 2009. She reported that she requested to stop taking her pain medication because she felt that it was not working. Claimant testified that she has not tried non-narcotic pain medicines. She alleged that she is unable to lift more than 10 to 15 pounds. Claimant testified that she can walk only 3 city blocks or up to 15 minutes. She alleged that she can sit for 30-45 minutes. Claimant testified that her pain level is 6 of 10 (10 most severe) on a normal day.
>
> Claimant testified that her neurologist told her that she could return to work back in December 2009. She reported that she did try to return to work but was unable to perform the job duties. Claimant testified that seh [*sic*] has applied for other work but has not been hired. Claimant testified that she was able to obtain a driver's license even though she is blind in the right eye.

* * *

The claimant has a history of a C5-6, C6-7 anterior cervical fusion performed by Dr. Marvin Cressman in 2004. Subsequently, the claimant has a history of degenerative disk disease in his [*sic*] neck and has been having neck pain. She was then involved in a rollover motor vehicle accident in December 2008 after having multiple drinks, and developed a very sudden acute severe neck pain with progressively severe lumbar pain and some numbness and tingling in his [*sic*] hands. (Exhibit 2F/16) [M]agnetic resonance imaging (MRI) scan of the cervical spine reveals the above-mentioned C4-5 disk disruption, central disk herniation and cord compression. Additionally, the C7-T1 fracture dislocation was a subluxation of about 3 mm of C7 on T1. MRI of the lumbar spine was negative. (Exhibit 5F/8) Claimant underwent a C4-5 anterior cervical discectomy; C7-T1 anterior cervical discectomy; anterior osteophytectomy; anterior fusion, C4-5, C7-T1; C4 to T1 anterior instrumentation using Stryker plate; and C4 to T1 posterior fusion instrumentation using Actifuse bone extender, local bone graft and instrumentation using Stryker oasis screws. (Exhibit 3F, 5F/7)

Follow-up treating notes indicate that claimant has been doing well and his [*sic*] fusion was considered to look stable and his [*sic*] wound was healed nicely. (Exhibit 5F/3, 10F) X-rays of the claimant's cervical spine showed postsurgical change involving C4 through C7 with hardware and alignment unchanged. (Exhibit 9F, 10F/3) Intraoperative films demonstrated placement of an anterior plate and interbody fusion C4-T1 and were noted to be stable. (Exhibit 5F/4, 8F/5) The undersigned finds that the objective medical evidence does not support the claimant['s] allegations of consistent severe pain.

Although the claimant complains of lower back pain, the medial evidence does not support that the pain is as severe as alleged. Specifically, x-rays of the claimant's lumbar spine were normal. (Exhibit 8F/3) However, an MRI of the claimant's lumbar spine showed mild chronic changes of the lumbar spine with no acute traumatic injury. (Exhibit 8F/2) Additionally, the claimant has not had any significant treatment for his [*sic*] alleged lumbar problems.

Claimant is unable to see out of her right eye since birth. (Exhibit 4F) Claimant testified that this would limit her ability to drive along with his [*sic*] constant neck pain. The claimant's right eye blindness causes some limitations in the claimant's ability to do basic work activities. The evidence supports a finding that, considering the claimant's vision, the claimant's residual functional capacity is consistent with a capacity for a restricted sedentary level of exertion with the following limitations: no balancing and no hazards including operating heavy equipment and no tasks requiring vision on the right or full field of vision or depth perception.

> The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. Specifically, the claimant is not seeking regular or continuous treatment for any medical impairment. Claimant testified that she stopped taking prescription pain medications in November 2009 and only takes over the counter pain medicines. The undersigned finds that this is not consistent with an individual complaining of severe constant pain.
>
> Moreover, the undersigned finds that claimant's own admission that she was trying to look for work to be consistent with the finding that the claimant can return to her past work. Claimant testified that her neurologist told her that she could return to work back in December 2009. The undersigned finds that it is significant that this was shortly after the claimant decided to stop taking prescribed pain medications.

(Tr. 14-15). The vast majority of evidence relied upon in this portion of the decision can be found nowhere in the record, and the portions of the record that actually relate to the Plaintiff, and which would have been relevant, are not mentioned.

The ALJ then relied on the vocational expert's testimony to conclude that Plaintiff was capable of performing past relevant work as a contractor clerk because it did not require performance of activities precluded by her RFC:

> The vocational expert (VE) testified that the claimant's work history for the last 15 years consists of a contractor and contractor clerk. Her work as a contractor clerk required sedentary exertion and was skilled with an SVP-7 (Specific Vocational Preparation). Claimant's work as a contractor required medium exertion and was skilled with an SVP-7. The VE further testified that a person with the claimant's RFC could do the work of a contractor clerk.

(Tr. 16). This would all be fine except that the Plaintiff never worked as a contractor or contractor clerk, and the ALJ makes no mention of her actual employment record in the decision.

## IV. LEGAL STANDARDS

Judicial review in social security cases is limited by statute. *See* 42 U.S.C. § 405(g); *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). The district court reviews the record to determine whether the Commissioner's decision is legally correct and supported by substantial evidence. *See*

*Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence is defined as "relevant evidence that a reasonable mind might accept to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). It is more than a scintilla, but less than a preponderance. *See Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427. The district court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *See Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). However, the court must scrutinize the entire record to ascertain whether substantial evidence supports the Commissioner's findings. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly benefits under the Social Security Act if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of twelve months. *Id.* § 423(d)(1)(A); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

The Commissioner has promulgated a five-step sequential process to be used by hearing officers in disability cases:

1. The hearing officer must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must then determine if the impairment equals or exceeds in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987). The burden then shifts to the Commissioner to show the claimant is capable of performing work in the national economy. *Id*. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

"Residual functional capacity" refers to the claimant's ability to do work despite any physical or mental impairments. 20 C.F.R. § 404.1545(a). The ALJ is responsible for assessing and determining residual functional capacity at the administrative hearing level. *Id*. § 404.1546. This assessment is based on reports from treating physicians and medical consultants about the claimant's ability to sit, stand, walk, lift, carry, and perform other work-related activities. *Id*. §§ 404.1513(b)(6) & 414.1513(c)(1). The opinions of treating physicians are generally entitled to great weight. *Id*. § 404.1527(d)(2); *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). However, a treating doctor's opinion on the nature and severity of an impairment is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2); *Spellman v. Shalala*, 1 F.3d 357, 364 (5th Cir. 1993).

## V. ANALYSIS

Plaintiff complains that the ALJ's findings are unsupported by substantial evidence in the record on several bases. She argues the ALJ erred in: (1) identifying "severe" impairments not in the record, while neglecting to consider a number of impairments in the record; (2) failing to explain how he reached the conclusion that the symptoms in this case were insufficiently severe to meet or equal the Listing criteria; (3) failing to properly assess the RFC by considering medical evidence not in the claim file and by failing to properly compare the RFC with Plaintiff's work history. Finally, Plaintiff argues that the Appeals Council erred in not considering the brief she submitted that details the ALJ's misstatement of facts.

Specifically, Plaintiff points out that the ALJ listed the following severe impairments: cervical stenosis with degenerative changes, status post cervical fusion, history of degenerative joint disease in right knee (status post total joint replacement), and congenital right eye blindness. While Plaintiff did receive a knee replacement, the cervical stenosis and congenital right eye blindness do not appear in the record. Furthermore, Plaintiff complains that the ALJ did not address a number of impairments, listed in the record, including lumbar radicular pain caused by a disc herniation impinging on the L4 and L5 nerve root, diabetes type II, headaches, autoimmune hepatitis, lupus, polyarthralgias, and possible fibromyalgia and tuberculosis. (Tr. 12).

Rather than admit his mistake and take the case back, the Commissioner instead attempts to justify his decision by asserting the Plaintiff's argument is inapposite because the denial of Plaintiff's application was not based on a Step Two determination that all her impairments were non-severe. The Commissioner further responds that the ALJ properly applied the listings, specifically noting Plaintiff's degenerative joint disease in the knee and back problems. The Commissioner argues that

the Plaintiff has the burden to prove the error was harmful, that procedural perfection in an administrative proceeding is not required, and that the decision was correct based upon evidence from the record that was not included in the ALJ's decision.

This argument ignores the glaring problem with this case. The overwhelming inclusion of erroneous evidence and lack of relevant evidence in the ALJ's decision precludes this Court from affirming the Commissioner's decision. The ALJ's decision erroneously states the plaintiff's age, employment history, testimony regarding Plaintiff's opinion of her RFC, impairments, causes of impairments, doctors, medical assessments, and treatments. Furthermore, the evidence cited by the ALJ that discredits the plaintiff's claim of disability does not appear in the record (and appears related to a totally different claimant). The combination of these errors suggests that another claimant's data was considered in writing the decision—as does the fact that Commissioner does not rebut Plaintiff's contention that someone else's medical records and vocational profile were used.

Although the Commissioner makes a number of arguments as to how evidence in the record, not mentioned in the decision, justifies the decision, this Court cannot weigh such evidence. The Supreme Court has stated:

> a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*SEC v. Chenery Corp.* 332 U.S. 194, 196 (1947). The Supreme Court subsequently clarified that "courts may not accept appellate counsel's post hoc rationalizations for agency action" because "*Chenery* requires that an agency's discretionary order be upheld, if at all, on the same basis

articulated in the order by the agency itself." *Burlington Truck Lines, Inc. v. U.S.* 371 U.S. 156, 168-169 (1962).

In the context of social security disability determinations, this court is not permitted to reweigh evidence or substitute its judgment for that of the Commissioner. *See Johnson,* 864 F.2d at 343-44. Accordingly, the Fifth Circuit has found the Commissioner's decisions may be affirmed only on the grounds stated. *See Cole ex rel. Cole v. Barnhart*, 288 F.3d 149, 151 (5th Cir. 2002). Also, the Fifth Circuit has consistently found that other administrative decisions may be affirmed only on grounds stated. See *Trencor, Inc. v. NLRB*, 110 F.3d 268, 272 & n. 5 (5th Cir. 1997); *NLRB v. Brookshire Grocery Co.*, 919 F.2d 359, 367 n. 9 (5th Cir. 1990); *Chem. Mfrs. Ass'n v. EPA,* 899 F.2d 344, 359 (5th Cir. 1990); *Am. Petroleum Inst. v. EPA*, 787 F.2d 965, 976 (5th Cir. 1986); *Tex. Power & Light Co. v. FCC*, 784 F.2d 1265, 1269-70 (5th Cir. 1986).

Here, since the ALJ overwhelmingly utilized erroneous evidence for his decision regarding Plaintiff, this Court cannot affirm the decision based upon such grounds. Indeed, in the twelve years I have been on the bench, this is one of the most obviously erroneous decisions from the Social Security Administration to come before me. It is astounding that the Appeals Council did not correct the errors itself.

## V. RECOMMENDATION

The undersigned **RECOMMENDS** that the District Court **REVERSE** the decision of the Commissioner, and **REMAND** this action for further review consistent with this Report and Recommendation..

## VI. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 23rd day of November, 2011.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE